# Commonwealth of Massachusetts
## PLYMOUTH SUPERIOR COURT
### Case Summary
### Civil Docket

## PLCV2015-00252
## Sampson, Jr. v U.S. Bank National Association as Trustee, Successor in Interest

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/19/2015 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 03/25/2015 | **Session** | A - Civil A - CtRm 5 (Brockton) | | |
| **Origin** | 1 - Complaint | **Case Type** | D13 - Declaratory judgement (231A) | | |
| **Track** | A - Average track | **Lead Case** | | **Jury Trial** | Unknown |

### DEADLINES

| | Service | Answer | Rule12/19/20 | Rule 15 | Discovery | Rule 56 | Final PTC | Judgment |
|---|---|---|---|---|---|---|---|---|
| **Served By** | | | 07/17/2015 | 05/12/2016 | 03/08/2017 | 04/07/2017 | | |
| **Filed By** | 06/17/2015 | 07/17/2015 | 08/16/2015 | 06/11/2016 | | 05/07/2017 | | 03/03/2018 |
| **Heard By** | | | 09/15/2015 | 06/11/2016 | | | 09/04/2017 | |

### PARTIES

**Plaintiff**
Francis J. Sampson, Jr.
Active 03/19/2015

**Private Counsel 656914**
Glenn F Russell, Jr
38 Rock Street
Suite 12
Fall River, MA 02720
Phone: 508-324-4545
Fax: 508-938-0244
Active 03/19/2015 Notify

**Defendant**
U.S. Bank National Association as Trustee,
Successor in Interest
to BoA., N.A.,sucessor by Merger to Lassalle Bank,
N.A.
Service pending 03/19/2015

**Private Counsel 690437**
Brian Linehan
Doonan Graves & Longoria LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915
Phone: 978-921-2670
Fax: 978-744-8780
Active 03/25/2015 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 03/19/2015 | 1.0 | Verified Complaint & civil action cover sheet filed (check in the amount of $280.00 rec'd. S/O/N and Track given in hand)) |
| 03/19/2015 | | Origin 1, Type D13, Track A. |
| 03/19/2015 | 2.0 | Plaintiff Francis J. Sampson, Jr.'s emergency MOTION to for Preliminary Injunction, Memorandum in Support |
| 03/19/2015 | 3.0 | Motion (P#2) Summons & Order of Notice to issue returnable on 3/23/15 (Frank M. Gaziano, Justice) |
| 03/19/2015 | 4.0 | Summons and order of notice issued; returnable 3/23/2015 |
| 03/20/2015 | | ONE TRIAL review by Clerk, case to remain in Superior Court. |
| 03/23/2015 | 5.0 | Notice for Removal to the United States District Court filed by U.S. Bank National Association as Trustee, Successor in Interest |
| 03/25/2015 | | Case REMOVED this date to US District Court of Massachusetts without exhibits |

A TRUE COPY ATTEST

*[signature]*

Clerk of Courts

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 03/23/2015 | Civil B - 3rd Floor (Plymouth) | Motion/Hearing: prel inj | Event canceled not re-scheduled |

**Commonwealth of Massachusetts**
PLYMOUTH SUPERIOR COURT
Case Summary
Civil Docket

### PLCV2015-00252
### Sampson, Jr. v U.S. Bank National Association as Trustee, Successor in Interest

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF PLYMOUTH | DOCKET NO. 15·0252A |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| FRANCIS J. SAMPSON, JR. | U.S. Bank, N.A., et. al. as Trustee for WaMu Pass-Through Certificates, Series 2007-OA4 |

| Plaintiff Atty | Glenn F. Russell, JR. | Type Defendant's Attorney Name |
|---|---|---|
| Address | 38 Rock Street, Suite #12 | Defendant Atty |
| City | Fall River State MA Zip Code 02720 | Address |
| Tel. | +1 (508) 324-4545 BBO# 656,914 | City State Zip Code |

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) TRACK | IS THIS A JURY CASE? |
|---|---|---|
| **D13 Declaratory Judgment G L C 231A - Average Track** | | [ ] Yes [✓] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

FILED
COMMONWEALTH OF MASS \ PLYMOUTH
ERT DEPT OF THE \ COSS

MAR 19 2015

Clerk of Court

## TORT CLAIMS
### (Attach additional sheets as necessary)

A.  Documented medical expenses to date:
  1.  Total hospital expenses ........................................ $
  2.  Total doctor expenses .......................................... $
  3.  Total chiropractic expenses ................................. $
  4.  Total physical therapy expenses .......................... $
  5.  Total other expenses (describe) ........................... $
  Subtotal $
B.  Documented lost wages and compensation to date .......... $
C.  Documented property damages to date .......................... $
D.  Reasonably anticipated future medical expenses .......... $
E.  Reasonably anticipated lost wages and compensation to date ... $
F.  Other documented items of damages (describe) ............. $

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

Total $

## CONTRACT CLAIMS
### (Attach additional sheets as necessary)
Provide a detailed description of claim(s):

TOTAL $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

A TRUE COPY ATTEST

AI hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Clerk of Courts

Signature of Attorney of Record _____  Date: March 19, 2015

A.O.S.C. 3-2007

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| **\* CONTRACTS** | | **\* REAL PROPERTY** | | **MISCELLANEOUS** | |
|---|---|---|---|---|---|
| A01 Services, Labor and Materials F) | | C01 Land Taking (eminent domain) | (F) | E02 Appeal from Administrative | |
| A02 Goods Sold and Delivered | (F) | C02 Zoning Appeal, G.L. c.40A | (F) | Agency G.L. c. 30A | (X) |
| A03 Commercial Paper | (F) | C03 Dispute concerning title | (F) | E03 Claims against Commonwealth | |
| A08 Sale or Lease of Real Estate | (F) | C04 Foreclosure of mortgage | (X) | or Municipality | (A) |
| A12 Construction Dispute | (A) | C05 Condominium Lien & Charges | (X) | E05 Confirmation of Arbitration Awards | (X) |
| A99 Other (Specify) | (F) | C99 Other (Specify) | (F) | E07 G.L. c.112, s.12S (Mary Moe) | (X) |
| E03 Claims against Commonwealth | (A) | E03 Claims against Commonwealth | (A) | E08 Appointment of Receiver | (X) |
| or Municipality | | or Municipality | | E09 General Contractor bond, | |
| | | | | G.L. c. 149, ss. 29, 29a | (A) |
| | | **EQUITABLE REMEDIES** | | E11 Workers Compensation | (X) |
| *TORT* | | D01 Specific Performance of Contract | (A) | E12 G.L.c.123A, s.12 (SDP Commitment) | (X) |
| B03 Motor Vehicle Negligence- | (F) | D02 Reach and Apply | (F) | E14 G.L. c. 123A, s. 9 (SDP Petition) | |
| personal injury/property damage | | D06 Contribution or Indemnification | (F) | E15 Abuse Petition, G. L. c. 209A | (X) |
| B04 Other Negligence- | (F) | D07 Imposition of a Trust | (A) | E16 Auto Surcharge Appeal | (X) |
| personal injury/property damage | | D08 Minority Stockholder's Suit | (A) | E17 Civil Rights Act, G.L. c.12, s. 11H | (A) |
| B05 Products Liability | (A) | D10 Accounting | (A) | E18 Foreign Discovery Proceeding | (X) |
| B06 Malpractice-Medical | (A) | D12 Dissolution of Partnership | (F) | E19 Sex Offender Registry G.L. c. 178M, | |
| B07 Malpractice-Other (Specify) | (A) | D13 Declaratory Judgment G.L. c. 231A | (A) | s. 6 | (X) |
| B08 Wrongful Death, G.L. c.229, s.2A | (A) | D99 Other (Specify) | (F) | E21 Protection from Harassment c 258E | (X) |
| B15 Defamation (Libel-Slander) | (A) | | | E25 Plural Registry (Asbestos cases) | |
| B19 Asbestos | (A) | | | E94 Forfeiture G.L. c.265 s.56 | (X) |
| B20 Personal Injury- slip & fall | (F) | | | E95 \*\*Forfeiture G.L. c. 94C, s. 47 | (F) |
| B21 Environmental | (F) | | | E96 Prisoner Cases | (F) |
| B22 Employment Discrimination | (F) | | | E97 Prisoner Habeas Corpus | (F) |
| B99 Other (Specify) | (F) | | | E99 Other (Specify) | (X) |
| E03 Claims against Commonwealth | (A) | | | | |

**\*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.**
**\*\*Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.**

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes     [ ] |

## SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, **where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).**

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
### MAY RESULT IN DISMISSAL OF THIS ACTION.

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT
NO. 15-0252 /A

FRANCIS J. SAMPSON, JR.

Plaintiff

vs.

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE, SUCCESSOR IN INTEREST TO
BANK OF AMERICA N.A., SUCESSOR IN
INTEREST BY MERGER TO LASALLE BANK,
N.A. AS TRUSTE FOR WAMU PASS THROUGH
CERTIFICATES, SERIES 2007-OA4

Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFF'S VERIFIED
COMPLAINT**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT

MAR 16 1975

Clerk of Court

## PREFATORY ALLEGATIONS

1. The Plaintiff, Francis J. Sampson (hereinafter "Plaintiff") is an individual with a usual place of residence at 85 Heritage Lane, Duxbury, Massachusetts 02332, who is the registered title holder of the real property at issue in this matter, which is located at 85 Heritage Lane, Duxbury, Massachusetts 02332 Plymouth County, in the Commonwealth of Massachusetts ("Premises").

2. The Defendant U.S. Bank, N.A. is a national and international banking concern that does not purport to act in its own capacity, or claim to enforce on balance sheet assets related to its own depository monies, but rather purports to act under the controlling term of the Pooling and Servicing Agreement Governing Instrument ("8k") and the Delaware Statutory Trust Statute (12 Del. Code 3801, et. Seq.), as a "successor trustee" on behalf of a Delaware Statutory Trust, claiming the purported legal authority to enforce contractual rights to the Plaintiff's mortgage and note, as a purported current legally held trust corpus asset[s].

3. Defendant(s) has/have subjected it/them self to the long-arm jurisdiction of this Court by having undertaken business and/or transactional business within the Commonwealth of Massachusetts.

## FACTS

4. On <u>March 26, 2007</u>, Plaintiff executed a purported promissory note specifically naming Washington Mutual Bank, <u>F.A.</u>, as the "Lender", and payee, in the amount of $432,000.00.

5. On <u>March 26, 2007</u>, Plaintiff also executed, and entered into a bi-lateral contractual agreement, in the form of a Security Instrument, specifically naming Washington Mutual Bank, <u>F.A.</u> ("WaMu"), as the "Lender", and specifically contractually granting WaMu [as the Lender] the right to enforce the "power of sale" at paragraph 22 of said contract.

6. On September 25, 2008, Washington Mutual Bank, <u>N.A.</u> failed ("Failure"), making this the largest bank failure in United States History.

7. Tin order for there to have been a legal conveyance of the underlying mortgage corpus assets to the Defendant Trust, the Trust's Governing Instrument, Pooling and Servicing Agreement, ("8k") required that the Plaintiff's note and mortgage to have been legally conveyed by WaMu Asset Acceptance Corp. on or before April 26, 2007.

8. Upon the failure of Washington Mutual Bank, <u>N.A.</u>, the Federal Depository Insurance Corporation stepped in as the "Receiver" of the Failed Bank's then held Assets and liabilities actually owned at the time of its Failure.

9. Washington Mutual Bank collapsed in 2008 in one of the biggest bank failures in U.S. history, after $16 billion in deposits were withdrawn in 10 days.

10. <u>Washington Mutual Bank</u> was placed into receivership with the <u>Federal Deposit Insurance Corp.</u>, which immediately sold its assets to <u>JPMorgan Chase Bank NA for</u> $1.9 billion.

11. While the FDIC took into Receivership the entity <u>named Washington Mutual Bank</u>, Washington Mutual Bank's holding company *Washington Mutual Inc.* ("WMI") filed for protection under Chapter 11 of the United States Bankruptcy Code, under Case No. 08-12229(MFW) in the U.S. Bankruptcy Court, District of Delaware, which bankruptcy also included the WMI subsidiary *WaMu Acceptance Corp.*,

12. Therefore, the assets of *WaMu Acceptance Corp* "the Company / Depositor" was not any "asset" *acquired* by JPMorgan Chase Bank through the FDIC.

13. Washington Mutual Bank was in the business of "*wholesale mortgage origination*", meaning that this entity did not ultimately rely upon monies used from its own banking institution's customer depository monies, for liquidity to issue mortgage loans, but rather originated mortgages strictly for sale into the secondary mortgage market, whereby Washington Mutual **Bank** utilized *WaMu Acceptance Corp*, and other WMI entities, to facilitate funding and transfer ownership of the mortgage loan corpus assets to the Defendant Trust, which entity[s] would thereafter sell certificated interests to the rights to the principal and interest payments from the underlying mortgage loan corpus asset pool, while the Defendant Trust itself purported to hold the legal ownership and title to the mortgage loan corpus assets themselves.

14. Therefore, here, where the Defendant Trustee [U.S. Bank, N.A.] purports that the Defendant Trust has "stepped into the shoes of Washington Mutual Bank/FDIC/JPMorgan Chase" [as owner/lender], the Defendant Trustee, as only a mere purported assignee, must comply first with the terms of the mortgage, and secondly must also strictly follow statutory condition precedents in order to be a party "with proper jurisdiction and authority "to utilize the non-judicial statutory remedy

15. In order for the Defendant Trustee to step into the shoes of Washington Mutual Bank as the plaintiff's "lender", it must be legally determined what precise legal right, title, and interest to the Plaintiff's mortgage and note, that Washington Mutual Bank "owned" at the time of its Failure.

16. As will be discussed below, the Governing Instrument (8k) of the Defendant Trust, makes clear that Washington Mutual Bank purported to "sell" the ownership of the Plaintiff's note and mortgage shortly after origination to WaMu Asset Acceptance Corp., but retained ownership of the right to "service" the Plaintiff's mortgage (as a bill collector).

17. Thus, at the time of Washington Mutual Bank's failure, at most it could only have purported to "service" Plaintiff's mortgage, not own it, and therefore at most the best JPMorgan Case Bank N.A. could claim through the FDIC is the purported acquisition of Washington Mutual Bank' right to service, not ownership of, the Plaintiff's mortgage.

18. In order for the Defendant Trust, and its Trustee to "step into the shoes of Washington Mutual Bank, it is role as "Lender", as the party specifically contractually granted the right to enforce the power of sale in Plaintiff's mortgage contract, the Plaintiff's note and mortgage [and attendant legal right to enforce the same] must be a *current legally held corpus asset* of the Defendant Trust.

19. However, despite selling the ownership interests immediately after origination of the loan, Washington Mutual Bank [not WMI] maintained rights to "service" the mortgage for the secondary market trusts on behalf of Bank Trustees, such s the "parade of Bank trustees involved here with the Defendant Trust, LaSalle Bank, Bank of America, and U.S. Bank, N.A..

20. Therefore Washington Mutual **Bank** did not hold any "*assets*" including any autonomous ownership of the Plaintiff's note and mortgage that passed through the FDIC to JPMC at the time of its Failure,

21. In the instant mater, Defendant purports that on *__May 10, 2010__*, JPMorgan Chace Bank, N.A., ["acting for Washington Mutual **Bank** N.A. (not WMI) "through the FDIC"] purportedly "assigned" Plaintiff's "*mortgage and note secured thereby*" to Bank of America N.A. successor by merger to LaSalle Bank, N.A. as trustee for WaMu Series 2007-OA4 Trust (See Exhibit A)

22. The purported May 10, 2010 "assignment" described in the above paragraph represents a void transaction, *as a condition precedent for any legally valid conveyance of the Plaintiff's note and mortgage to the Defendant Trust,* as under the Governing Instrument of the Defendant Trust, there could have only been a legal conveyance to the Trust by The *WMI subsidiary WaMu Acceptance Corp* [not Washington Mutual **Bank** / FDIC / JPMorgan Chase], on or before *April 26, 2007,* and not May 10, 2010.

23. On April 23, 2013, another purported "confirmatory assignment' is caused to be recorded upon the Plaintiff's title to the Premises, now stating that JPMorgan Chase Bank, N.A., through the FDIC, assigned the mortgage an note secured thereby to U.S. Bank, N.A. as Successor in interest to Bank of America N.A., successor by merger to LaSalle Bank, N.A., Trustee for Washington Mutual Mortgage Pass-Through Certificates WaMu Series 2007-OA4

24. In U.S. Bank v. Ibanez 458 Mass. 637,654 (2011) stated that a "confirmatory assignment" could only "confirm" an original assignment that was legally valid or made.

> "A confirmatory assignment, however, cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time. See Scaplen v. Blanchard, 187 Mass. 73 , 76 (1904) (confirmatory deed "creates no title" but "takes the place of the original deed, and is evidence of the making of the former conveyance as of the time when it was made"). Where there is no prior valid assignment, a subsequent assignment by the mortgage holder to the note holder is not a confirmatory assignment because there is no earlier written assignment to confirm.

25. In Bevilacqua v. Rodriguez, 460 Mass. 762, 771 (2011), the SJC opined that the mere fact that an assignment is "recorded" can in no manner establish the legal validity of that document, as recording is only for notice purposes, and that the examination turns upon the legal foundation to establish the documents legal validity, not the fact that it was recorded:

> "..there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect. See S & H Petroleum Corp. v. Register of Deeds for the County of Bristol, 46 Mass. App. Ct. 535 , 537 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function . . ."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G. L. c. 183, § 4 (leases and deed); G. L. c. 203, §§ 2-3 (trust documents). Recording is not sufficient in and of itself, however, to render an invalid document legally significant. See Arnold v. Reed, 162 Mass. 438 , 440 (1894); Nickerson v. Loud, 115 Mass. 94 , 97-98 (1874) ("mere assertions . . . whether recorded or unrecorded, do not constitute a cloud upon title, against which equity will grant relief"). As a result, it is the effectiveness of a document that is controlling rather than its mere existence. See Bongaards v. Millen, 440 Mass. 10 , 15 (2003) (where grantor lacks title "a mutual intent to convey and receive title to the property is beside the point").

26. Therefore where the Defendant Trustee, relies upon two assignments, the underlying legal foundation for the same must be established to confirm their legal viability.

27. Therefore, if the First purported assignment is legally ineffective, the April 25, 2013 "confirmatory assignment" cannot "confirm" the May 14, 2010 purported "assignment", as it was never legally made the first time.

28. The Defendant Trustee cannot credibly dispute that the purported assignments that it solely relies upon, clearly contravene the above requirements of the Governing Instrument of the Defendant Trust.

29. The Defendant Trustee cannot credibly dispute that the **first publication of auction sale** in this matter took place subsequent to June 22, 2012 [the date of the decision from the Massachusetts Supreme Judicial Court ("SJC") in *Eaton v. Fed. Nat'l Mortgage Ass'n*, 462 Mass 569, 589 (2012)].

30. In *Eaton*, the SJC definitively held that an entity claiming to be "mortgagee" [under the statutory definition of that term], where seeking to enforce the <u>extra judicial</u> statutory remedy, must either be the [legal] owner of the borrower's promissory note, or an agent acting for a [legally verifiable] note owner, and simultaneously be in possession of legal rights to enforce the power of sale in the borrowers mortgage contract, as a party in current contractual privity with the borrower.

31. As a result of the above paragraph, for **purposes of the specific fact pattern presented to this Court,** the *statutory definition of the term "mortgagee" is controlled by the ruling by the SJC in Eaton.*

32. While there have been a few case law decisions **decided** after June 22 2012, a close reading of all of these decisions reveals that all of these prior decided matters involve fact patterns where the first publication of auction sale took place prior to June 22, 2012, making the holding of *Eaton* inapplicable to those decided opinions.[1]

33. Therefore, as of the date of the drafting of the instant complaint, Plaintiff is unaware of any court within this Commonwealth undertaking a "post Eaton analysis" of a fact pattern examining the statutory definition of the term "mortgagee".

34. Due to a downturn in the economy, Plaintiff fell behind on payments related to the instant mortgage.

35. Plaintiff began to receive correspondence from JPMorgan Chase Bank, N.A. related to mortgage billing, with related correspondence indicating that it was "servicing" the Plaintiff's mortgage (not owning it).

36. On or about <u>October 28, 2010</u>, Plaintiff received correspondence from, indicating that the Defendant Trustee on behalf of the Defendant Delaware Statutory Trust, intended to utilize the Massachusetts statutory remedy under G.L. c. 244, §14, and thereby utilizing the non-judicial foreclosure process related to the Premises on or about March 01, 2014.

37. Enforcement of a mortgage is governed by statute and contract within this Commonwealth, see G.L. c. 183, § 21.

---

[1] Indeed, Plaintiff anticipates that the Defendant will attempt to cite to such cases, however, such attempt should be summarily disregarded, as a reading of these matters will reveal their *inapplicability* as to the precise post Eaton fact pattern presented before the Court by Plaintiff in this action.

**The Defendant Cannot Credibly Dispute That It Purports To Act As A "Separate Trustee" [under Delaware Law] That Purports To Enforce Legal Rights To A Purported Legally Held Corpus Asset of the WaMu Mortgage Pass-Though Certificates, Series 2007-OA4 Delaware Statutory Trust**

38. The first publication of auction sale of the Premises, undisputedly identifies the Defendant U.S. Bank, N.A. as a [successor] "Trustee" for the Defendant Trust.

39. The first publication of auction indisputably identifies the Trust that the Defendant Trustee purports to act on behalf of, is *WaMu Mortgage Pass-Through Certificates, Series 2007-OA4.*

40. The Defendant[s] cannot credibly dispute that it is fundamental trust law principals that instruct us that in order for the Defendant Trustee [U.S. Bank, N.A.] to have the ability to legally act on behalf of the Defendant Trust , the Defendant Trustee could only purport to enforce current legal rights [on behalf of the trust] for a *currently legally held corpus asset of the trust*.

41. The Defendant[s] cannot credibly dispute that it is fundamental trust law principals that instruct us that a trust is *controlled* by its "*Governing Instrument*"

42. The Defendant[s] cannot credibly dispute the fact that the controlling terms of the Defendant *WaMu Mortgage Pass-Through Certificates, Series 2007-OA4* Trust are identified in a document entitled the "*Pooling and Servicing Agreement*" ("8k").

43. The Defendant[s] cannot credibly dispute that the Governing Instrument of the Defendant Trust, controls, and sets forth, the necessary condition precedents for there to be a legal conveyance of the Plaintiff's note and mortgage as an underlying mortgage loan corpus asset to the Defendant Trust

44. The Plaintiff herein attaches the Governing Instrument 8k at Exhibit A, and which document therein also incorporates by reference a related document entitled a "Prospectus Supplement" ("424B5"), Exhibit B.

45. The Plaintiff herein incorporates by reference both; the 8k and the 424B5, to his plausibly pled allegations relative to the Defendant Trustee, and the Defendant Trust, as to the failure to establish that the right to enforce the Plaintiff's Note and the legal claim to the defeasible fee title to Plaintiff' premises, and therefore contractual privity to enforce the Plaintiff's mortgage, is/are not currently any legally held corpus asset of the WaMu Mortgage Pas Through Certificates, Series 2007-OA4 Delaware Statutory Trust.

46. The Defendant Trustee cannot credibly dispute that the definition section of the Governing Instrument 8k of the Defendant Trust, indisputably defines the Defendant Trust as follos:

    `Trust`: WaMu Mortgage Pass-Through Certificates Series 2007-OA4 Trust, a Delaware statutory trust, created pursuant to the Original Trust Agreement. [see Exhibit A, at Bates# Samp-0080]

47. The Defendant Trustee cannot credibly dispute that the definition section of the Governing Instrument 8k of the trust defines the "Original Trust Agreement" as

*Original Trust Agreement*: The Trust Agreement, dated as of <u>April 1, 2007</u>, between <u>the Company</u> and the Delaware Trustee, providing for the creation of the Trust. [see Exhibit A, at Bates# Samp-0064]

48. The Defendant Trustee cannot credibly dispute that the 8k indisputably further identifies that the Defendant Trust is a "Delaware Statutory Trust" and that the 8k represents the Governing Instrument of the Defendant Delaware Statutory Trust, which *amends and restates* the "original trust agreement", [see Exhibit A, at Bates# Samp-0038]

"it is the intention of <u>the Company</u>, the Servicer, the Trustee and the Delaware Trustee that the Trust created by this Agreement constitute a statutory trust under the Statutory Trust Statute, that this Agreement constitute the governing instrument of the Trust, and that this Agreement amend and restate the Original Trust Agreement"

49. The definition section of the Governing Instrument 8k defines "statutory Trust Statute as:

*Statutory Trust Statute*: Chapter 38 of Title 12 of the Delaware Code, 12 <u>Del.C.</u> §3801 et seq., as the same may be amended from time to time. [see Exhibit A, at Bates# Samp-0079]

50. The definition section of the Governing Instrument 8k defines "*the Company*" as:

*Company*: The meaning specified in the introductory paragraph hereof. [see Exhibit A, at Bates# Samp-0050]

51. The "introductory paragraph" of the 8k defines "*the Company*" as WaMu Asset Acceptance Corp., who is also "*the Depositor*" [not Washington Mutual Bank].

"This Pooling and Servicing Agreement, dated as of <u>April 1, 2007</u> (this "<u>Agreement</u>"), is by and among **WaMu Asset Acceptance Corp., as depositor (the "Company")**, **Washington Mutual Bank, as Servicer**, LaSalle Bank National Association, as Trustee, and Christiana Bank & Trust Company, as Delaware Trustee. Capitalized terms used in this Agreement and not otherwise defined have the meanings ascribed to such terms in Article I hereof." [see Exhibit A, at Bates# Samp-0029].

52. With regard to the requirements for a legal conveyance of the Defendant Delaware Statutory Trust's mortgage loan corpus, the definition section of the Governing Instrument 8k, defines the "Cut Off Date", [ie the date of the identified universe of the mortgage loan corpus assets at the time of the "Original Trust Agreement"]

Means (i) for each Mortgage Loan originated on or before <u>April 1, 2007</u>, <u>April 1, 2007</u> and (ii) for each Mortgage Loan originated during the period from, and including, <u>April 2, 2007</u> to, and including, <u>April 10, 2007</u>, the related date of origination for such Mortgage Loan. [see Exhibit A, at Bates# Samp-0052].

53. April 01, 2007 was also the date of the Original Trust Agreement [see Exhibit A, at Bates# Samp-0064]

54. With regard to the requirements for a legal conveyance of the Defendant Delaware Statutory Trust's mortgage loan corpus, the definition section of the Governing Instrument 8k, indisputably defines the "*Closing Date*", [ie *the date certain for the legal conveyance of the mortgage loan corpus assets to the Defendant Trust to take place on*] **as April 26, 2007.** [see Exhibit A, at Bates# Samp-0050]

55. In the Prospectus Supplement, 424B5 document is stated the following requirements of the required "***transactions***" for a legal conveyance of the Trust's underlying mortgage loan corpus assets to the Defendant Trust, at the time of its creation:

TRANSACTION PARTICIPANTS

On April 26, 2007, **which is the closing date**, the mortgage loans that support the certificates **will be *sold* by Washington Mutual Bank, the sponsor of the securitization transaction, to WaMu Asset Acceptance Corp., the depositor. On the closing date, the depositor [WaMu Asset Acceptance Corp] will *sell* the mortgage loans and related assets to the WaMu Mortgage Pass-Through Certificates Series 2007-OA4 Trust.** In exchange for the mortgage loans and related assets, the Trust will issue the certificates pursuant to the order of the depositor. The **mortgage loans will be serviced by Washington Mutual Bank, as servicer.** Some servicing activities will be performed by Washington Mutual Mortgage Securities Corp., as administrative agent of the servicer. Some servicing activities will be outsourced to third party vendors. The trustee of the Trust will be LaSalle Bank National Association, and the Delaware trustee will be Christiana Bank & Trust Company. **Washington Mutual Bank fsb will have possession of and will review the mortgage notes, mortgages and other legal documents related to the mortgage loans** as *custodian* **for the Trust**. [see Exhibit B, at Bates# Samp-0196-0197].

56. Therefore, the Governing Instrument clearly require two (2) sales of the Plaintiff's Note and mortgage for there to have been a legal conveyance of the same, in order that the Plaintiff's Note and Mortgage are current legally held corpus assets of the Defendant Trust;

(1) Sale 1 - Washington Mutual Bank (as originator/sponsor) to WaMu Asset Acceptance Corp.[as Depositor / Company], [however even though Washington Mutual Bank sold the ownership of the mortgage loans, it retained the right to "service" the mortgage loans which purported to form the "certain assets acquired by JPMC though the FDIC].

(2) Sale 2 - WaMu Asset Acceptance Corp.[as Depositor / Company, [and not acquired through the FDIC by JPMC] to the Defendant WaMu Mortgage Pass-Through Certificates Series 2007-OA4 Trust.

57. At section 2.04 of the Governing Instrument 8k, with regard to the legal conveyance of the mortgage loan asset corpus, the terms state:

*Conveyance of Mortgage Pool Assets; Security Interest.*

The Company [WaMu Asset Acceptance Corp.] does hereby irrevocably sell, transfer, assign, set over and otherwise convey to the Trust, without recourse, all **the Company's right, title and interest in and to the Mortgage Pool Assets.** The Trust, as payment of the purchase price of the Mortgage Pool Assets and in consideration of the Company making the Initial Group 1 Servicing Fee Shortfall Deposit, the Initial Group 2 Servicing Fee Shortfall Deposit and the Initial Interest Shortfall Deposit pursuant to Section 2.01, shall, on the Closing Date, issue the REMIC I Regular Interests and the Class R-1 Residual Interest to the Company. The REMIC I Regular Interests and the Class R-1 Residual Interest shall together be a separate series of beneficial interests in the assets of the Trust consisting of the Mortgage Pool Assets pursuant to Section 3806(b)(2) of the Statutory Trust Statute. [see Exhibit A, at Bates# Samp-0084]

58. At Section 2.05 of the Governing Instrument 8k, with regard to the conveyance of the mortgage loan asset corpus

    Section 2.05.        *Delivery of Mortgage Files.*

    On the *Closing Date*, the Company shall deliver to and deposit with, or cause to be delivered to and deposited with, the Trustee or the Initial Custodian the Mortgage Files, which shall at all times be identified in the records of the Trustee or the Initial Custodian, as applicable, as being held by or on behalf of the Trust. [see Exhibit A, at Bates# Samp-0084,85]

59. To support its claim that the Plaintiff's Note and mortgage are a current legally held corpus asset of the Defendant Delaware Statutory Trust, the Defendant Trustee relies upon two recorded purported assignments, which purport to have taken place on May 10, 2010, by JPMorgan Chace Bank N.A. through purported rights received through the FDIC, and April 25, 2013.

60. Thus, these recorded purported "assignments" that the Defendant Trustee solely relies upon, indisputably [and independently] support Plaintiff's plausible allegation suggesting the plausible theory for his entitlement to relief, which is that these recorded purported assignments clearly *facially contravene* the requirements of the controlling terms of the Defendant Trust's Governing Instrument 8k for a legal conveyance of a purported legally held corpus asset of the Defendant Trust, both as to *when* these documents claim these purported assignments *temporally occurred,* [which does not comport with the April 26, 2007, date certain "Closing Date"], and as to the *claimed assignor*, as the controlling terms of the Governing Instrument 8k, indisputably required for the legal conveyance to the Defendant Trust was to solely be made by a party certain; *WaMu Asset Acceptance Corp.*, [not Washington Mutual Bank, and or as any "asset" received by JPMorgan Chase Bank through the FDIC].

61. Additionally, the Governing Instrument 8k required two sales of the title to the Plaintiff's note and mortgage, and these purported intermediate transfers of the Plaintiff's note and mortgage is/are not accounted for under Defendants recorded documents.

62. Plaintiff has plausibly suggested a plausible ground for his entitlement to relief that his note and mortgage are not legally held corpus assets of the Defendant Trust, which must be accepted s true, and therefore the Defendant U.S. Bank N.A. as the Trust's Trustee cannot enforce legal rights over an asset that is not legally among its corpus assets.

63. Therefore the Defendant Trustee not a proper party with jurisdiction and authority to utilize the statutory remedy under G.L. c. 244, § 14 against Plaintiff, as it is not a party in contractual privity with Plaintiff, nor can it claim ownership of his Note, as the same is/are not current legally held corpus asset of the Defendant Trust.

**Delaware Statutory Trust Statute, 12 Del. Code §3801, et. Seq.**

64. **12 Del. Code §3801** states:

> **"Governing instrument"** means any instrument (whether referred to as a trust agreement, declaration of trust or otherwise) **which creates a statutory trust or provides for the governance of the affairs of the statutory trust and the conduct of its business.** A governing instrument: (3) May contain any provision that is not inconsistent with law or with the information contained in the certificate of trust. **A statutory trust is not required to execute its governing instrument. A statutory trust is bound by its governing instrument whether or not it executes the governing instrument. A beneficial owner or a trustee is bound by the governing instrument whether or not such beneficial owner or trustee executes the governing instrument.** [see Exhibit C,at Bates# Samp-0610]

65. At Section 3809, the Delaware Statutory Trust Statute references "Applicability of Trust Law": "Except to the extent otherwise provided in the governing instrument of a statutory trust or in this subchapter, the laws of this State pertaining to trusts are hereby made applicable to statutory trusts " [see Exhibit C,at Bates# Samp-0618]

66. Therefore, the Defendant Trust was never in legal possession of the Plaintiff's note and/or mortgage under the Delaware Statutory Trust Statute, where Delaware law governs the "creation and formation of the Defendant Trust".

67. As the Delaware Statutory Trust Statute clearly states that, except where provided in the Governing Instrument (8k), the laws of the state of Delaware related to Trusts is made applicable to Delaware Statutory Trusts

68. Therefore, traditional well established and well settled trust law principles, and related case law related thereto, apply to the Defendant Trust, its Trustee, and the purported conveyance of the underlying mortgage loan corpus assets.

**Establishment of Necessary Condition Precedents In Order For An Entity To Utilize The Statutory Remedy Under G.L. c. 244, § 14**

69. While Delaware Law Controls The Formation and Governance [along with the Governing Instrument] of the Defendant Trust, Massachusetts Law controls the Defendant Trustee's attempt to utilize the statutory remedy as against Plaintiff under G.L. c. 244, § 14.

70. Massachusetts law also controls the definition of a "mortgagee" where attempting to utilize said statutory remedy.

71. Where a purported foreclosing entity is a purported "assignee", Massachusetts law governs the purported assignment[s} of mortgage as an interest in real property that the Defendant Trust, and its trustee solely rely upon, as Massachusetts is a "title theory jurisdiction".

72. Under the contractual language of Plaintiff's mortgage, said language is subordinate to the "Applicable Law" of this jurisdiction, as this term Applicable Law is defined within the contractual language of the Plaintiff's mortgage contract at paragraph 16 and further defined at paragraph,

73. The Plaintiff's mortgage contract defines "Applicable Law" to include non-appealable final decisions of this Commonwealth, such as *Eaton v. Fed Nat'l Mortgage Ass'n* 462 Mass 569 (2012), which redefined the term "mortgagee", and *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, at n. 16 (2011), which defined what a foreclosing entity must establish with regard to being a proper party where it claims to be n assignee through reliance upon purported trnsfers in the secondary mortgage market.

74. Indeed in *Ibanez*, the SJC stated at p. 649

"Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor. See G. L. c. 183, § 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175 , 177 (1917). In a "title theory state" like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, <u>458 Mass. 1</u> , 6 (2010). Therefore, when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee. See Vee Jay Realty Trust Co. v. DiCroce, <u>360 Mass. 751</u> , 753 (1972), quoting Dolliver v. St. Joseph Fire & Marine Ins. Co., 128 Mass. 315 , 316 (1880) (although "as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands," mortgagee has legal title to property); Maglione v. BancBoston Mtge. Corp., <u>29 Mass. App. Ct. 88</u> , 90 (1990). <u>Where, as here, mortgage loans are pooled together in a trust and converted into mortgage-backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such.</u>

75. Indeed, and additionally, under the Applicable Law, as defined within the contractual language of the Plaintiff's mortgage contract at paragraph 16 and defined at paragraph, under a non-appealable final decision of this Commonwealth, a foreclosing mortgagee is required to act in a position of good faith, and in trust on behalf of the mortgagor, and others holding thereunder, See *Sandler v. Silk*, 292 Mass 493, 496 (1935), and where a purported the foreclosing entity is a purported "mortgagee" it is held to even a stricter standard, see *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, at n. 16 (2011).

76. Here, the Defendant Trustee purports to solely rely upon a purported "assignment[s] from JPMorgan Chase Bank, N.A , purporting to create the appearance that it "assigned the

"ownership" of Plaintiff's note and mortgage to the Defendant Trust on May 10, 2010, where such conveyance facially contravenes the requirements of the Defendant Trust's Governing Instrument with regard to necessary condition precedents for a legal conveyance of a mortgage loan corpus asset to the Defendant Trust.

77. Further, Plaintiff plausibly challenges the contractual right of Defendant Trustee on behalf of the Defendant Delaware Statutory Trust, to utilize the statutory non judicial foreclosure process under G.L. c. 244, § 14, as any legal statutory valid party.

## CAUSES OF ACTION

### Count I
### Declaratory Judgment that the Defendant Trustee Is Not A Proper Party With Current "Jurisdiction and Authority" Under Statute To Enforce The Power of Sale In Plaintiff's Mortgage Contract, As A Legally Held Corpus Asset of The Defendant Trust Under The Strictures of G.L. c. 244§ 14

78. Plaintiff repeats and realleges all paragraphs above as set forth fully above herein

79. Predicated upon Defendants own publically recorded documents upon the Plaintiff's title, at the Plymouth County Registry of Deeds, the Defendant Trustee on behalf of the Defendant Delaware Statutory Trust never had any contractual right as "mortgagee", or ever held any current legal "jurisdiction and authority" under statute to enforce the power of sale in Plaintiffs' mortgage contract under G.L. c. 244 § 14.

80. The SJC has stated that the decisional case law of this Commonwealth has not so held that the mortgage automatically follows the note, as Massachusetts is a title theory jurisdiction, where the "note and mortgage may travel independent". See *U.S. Bank v. Ibanez* 458 Mass. 637 (2011)

81. Predicated upon Defendants own publically recorded documents upon the Plaintiff's title, at the Plymouth County Registry of Deeds, the Defendant Trustee on behalf of the Defendant Delaware Statutory Trust, the Plaintiff's note and mortgage, in particular, were never a legally "owned" asset of the Failed Bank Washington Mutual Bank, that was ever legally transferred to the FDIC as Receiver, and thereafter purportedly "acquired" by JP Morgan Chase Bank, N.A.

82. Therefore, the Legal Notice provided to Plaintiff pursuant to G.L. c. 244 § 14 is not valid because at the time it was sent, and predicated upon Defendants own publically recorded documents upon the Plaintiff's title, at the Plymouth County Registry of Deeds, the Defendant Trustee on behalf of the Defendant Delaware Statutory Trust was never was a proper "assignee" under statute in order to be a legally valid "holder" of Plaintiffs' mortgage, or agent of any legally verifiable current legal "owner" principal of the Plaintiffs' purported promissory note.

83. Therefore, predicated upon Defendants own publically recorded documents upon the Plaintiff's title, at the Plymouth County Registry of Deeds, the Defendant Trustee on behalf of the Defendant Delaware Statutory Trust. as mere purported assignee never held the legal right and/or authority to act as a "mortgagee" under the strict requirements of the Massachusetts state statute at issue. See *Bottomly v. Kabchinick*, 13 Mass.App.Ct. 480, 434, 434 N.E.2d 667 (1982).

84. Plaintiff respectfully requests that this Court make declaratory judgment making such above finding and Order.

85. Plaintiff, based upon all of the above plausible allegations, further seeks declaratory Judgment that title and possession be rightfully returned to his name

## Count II – Wrongful Foreclosure

86. Plaintiff repeats and realleges all paragraphs above as set forth fully above herein.

87. Where utilizing the statutory remedy under G.L. c. 244, §14, the historical case law examination of actions occurring under stautue have unwaveringly found that statutory non-judicial foreclosure auctions are "initiated" at the time of the first publication of auction sale.

88. When the Defendant Trustee made the first publication of the auction sale of the Plaintiff's Premises, it initiated the statutory non-judicial foreclosure remedy, where it was not a party with proper jurisdiction and authority to utilize said statutory remedy.

89. Such publication was intentional.

90. Plaintiff was harmed by such publication through detrimental effects to the title to the Premises, and to Plaintiff's reputation.

91. Plaintiff will prove damages at trial

## Count III – Slander of Title
## Defendant JPMorgan Chase Bank, N.A.

92. Plaintiff repeats and realleges all paragraphs above as set forth fully above herein.

93. "Slander of title is a tort action for damage to real property resulting from interference with title to real estate by falsehoods which although not personally defamatory, cause the Plaintiff pecuniary loss through interference with....dominion over his property" *Salloom v. Lister* 2004 WL 1836027, 18 Mass L. Rptr. 165 at *2 (Mass Super. 2004).

94. "In Massachusetts, a person is liable for slander of title, i.e. injurious falsehood", if he or she (a) publishes a false statement, (b) that harms the interests of another; (c) with the intent to harm the interests of another or "either recognizes or should recognize that it is likely to do so, an (d) knows that the statement is false or acts in reckless disregard of its truth or falsity". *Dulgarian v. Stone*, 652 N.E. 2d 603, 609 (Mass. 1995).

95. (a) <u>Publication of false statement</u>. Here it is unquestioned that the Defendant has caused a false publication(s) to be publically recorded at the Plymouth County Registry of Deeds that purport to state that Defendant(s) currently had/has ownership of the defeasible fee title to Plaintiff's residence.

96. Further, these publications are "injurious falsehoods", that has harmed the interests of Plaintiff, which were made by Defendant (s) with intent to harm Plaintiff's interests, and Defendant had scienter of the wrongfulness of these publications, through its industry practice, and scienter that its purported foreclosure auction took place in contravention of the clear mandates set forth

under Massachusetts statutory law..

97. (b) <u>Harm to Plaintiff</u>. It is unquestioned that Defendant's publication of the false assertion that it is the current defeasible fee title holder of the Plaintiff's residence, has caused significant financial harm to the Plaintiff, by placing an legally unenforceable claim(s) upon the Plaintiff's title to real property..

98. (c) <u>Intent of Defendant to Harm Plaintiff</u>. It is unquestioned that the Defendant intended to harm the property interests of Plaintiff through its legally void publications of auction of the Plaintiff's residence.

99. (d) <u>Scienter of Defendant of the wrongfulness of its actions</u>. Defendant knew or should have known, of the falsity of said false publications on the Plymouth County Registry of Deeds, and intentional publication of the auction sale.

100.     Thus, based upon the above numbered paragraphs, Plaintiff has succinctly set out, and successfully pled, the specific acts by Defendant which meet the foundational elemental requirements to establish the tort of Slander of his Title by Defendant.

101.     Plaintiff seeks all damages allowable in tort, or otherwise allowable by this court, for these transgressions by the Defendant.

102.     Plaintiff will prove damages at trial.

WHEREFORE, the Plaintiff respectfully requests:

a.       That this Court make a declaratory judgment that, the Defendant U.S. Bank, N.A. as Trustee for WaMu Mortgage Pass Through Trust Certificates, Series 2007-OA4 is not current proper party(s) to utilize the statutory remedy under G.L. c. 244, § 14.

b.       That this Court award Plaintiff reasonable attorneys and expert fees, and all damages that the court finds meet and just under the circumstances

c.       That this Court issues other such further and additional relief as it deems appropriate, meet, and just under the circumstances.

Respectfully submitted,
Plaintiffs,
By his Attorney,

Glenn F. Russell, Jr.
BBO# 656914
38 Rock Street, Suite #12
Fall River, MA 02720
(508) 324-4545
russ45esq@gmail.com

A TRUE COPY ATTEST

Clerk of Courts

## VERIFICATION

I, Francis J. Sampson, being duly sworn depose and state that we have read a copy of this Verified Complaint, and have read the facts and statements contained and hereby, and attest that the facts and statements contained in this Amended Verified Complaint are true to the best of our knowledge and belief, and that we have not omitted any material facts herein, on this the 26th day of September, 2014.


_____

Francis J. Sampson

## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr., hereby certify that on March 19, 2015, I served a true courtesy copy of the foregoing Complaint, Emergency Motion for Preliminary Injunction, and Memorandum of Law In Support thereof, with referenced Exhibits attached, on the Defendant's attorney, listed below;

Doonan, Graves, Longoria
100 Cummings Center 210,
Ste 225D
Beverly, MA 01915

Glenn F. Russell, Jr

A TRUE COPY ATTEST

Clerk of Courts


COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT
NO. *15 - 0252A*

FRANCIS J. SAMPSON, JR.

   Plaintiff

vs.

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE, SUCCESSOR IN INTEREST TO
BANK OF AMERICA N.A., SUCESSOR IN
INTEREST BY MERGER TO LASALLE BANK,
N.A. AS TRUSTE FOR WAMU PASS THROUGH
CERTIFICATES, SERIES 2007-OA4

   Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**PLAINTIFF'S
EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION**

*[handwritten left margin: 3/19/15 (ORZAANO, J) SUMMONS + ORDER OF NOTICE TO ISSUE, RETURNABLE ON 3/23/15. ATTEST. [signature] Asst Clerk]*

## INTRODUCTION

  NOW COMES, Francis J. Sampson, Jr. ("Plaintiff") who herein through counsel,

respectfully submits his Emergency Motion for Preliminary Injunction against U.S. BANK, N.A.

AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA N.A., SUCESSOR IN

INTEREST BY MERGER TO LASALLE BANK, N.A. AS TRUSTE FOR WAMU PASS

THROUGH CERTIFICATES, SERIES 2007-OA4 , to stop its intended March24, 2015

foreclosure auction of his residential home, until such time that his underlying complaint in this

matter can be heard on its merits.

  The Plaintiff is entitled to the requested relief because he faces a substantial risk of

irreparable harm if the requested relief is denied. The Plaintiff has a substantial likelihood of

success on the merits in this case, under his plausibly pled allegations plausibly suggesting the

grounds of his entitlement to relief, and the Defendant(s) will not suffer any harm if this request is granted due to the fact that it does not have current standing to enforce the power of sale in the Plaintiffs' mortgage, as it has not complied with the mandated statutory condition precedents under G.L. c. 244 § 14.

The Plaintiff further relies upon his attached Memorandum of Law In Support of the Instant Motion, as well as his plausible allegations in his underlying verified plausibly pled complaint, and attached Exhibits thereto.

**WHEREFORE,** the Plaintiff respectfully requests that this court grant his request for emergency injunctive relief.

Respectfully submitted,
Plaintiff
By his Attorney,

Glenn F. Russell, Jr., Esq.
BBO# 656914

Glenn F. Russell, Jr.,
& Associates, P.C.
38 Rock Street, Suite #12
Fall River, MA 02720
(508) 324-4545
(508) 938-0244

A TRUE COPY ATTEST

Clerk of Courts

Dated: March 19, 2015

2

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.                                    SUPERIOR COURT DEPARTMENT
                                                 NO. 15-0252A

| | |
|---|---|
| FRANCIS J. SAMPSON, JR. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION AS | ) |
| TRUSTEE, SUCCESSOR IN INTEREST TO | ) |
| BANK OF AMERICA N.A., SUCESSOR IN | ) |
| INTEREST BY MERGER TO LASALLE BANK, | ) |
| N.A. AS TRUSTE FOR WAMU PASS THROUGH | ) |
| CERTIFICATES, SERIES 2007-OA4 | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |

**PLAINTIFF'S
MEMORANDUM IN SUPPORT
EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAR 1 9 2015

Clerk of Court

## INTRODUCTION

NOW COMES, Francis J. Sampson, Jr. ("Plaintiff") who herein through counsel,

respectfully submits his Memorandum In Support of his Emergency Motion for Preliminary

Injunction against U.S. BANK, N.A. AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK

OF AMERICA N.A., SUCESSOR IN INTEREST BY MERGER TO LASALLE BANK,  N.A.

AS TRUSTE FOR WAMU PASS THROUGH CERTIFICATES, SERIES 2007-OA4 , to stop

its intended March 24, 2015 foreclosure auction of his residential home, until such time that his

underlying complaint in this matter can be heard on its merits.

The Defendant Trustee does not meet the statutory definition of "mortgagee" under G.L.

c. 244 § 14, on many distinct foundational grounds that include, but are not limited to:

- The Defendant Trustee/Delaware Statutory Trust  is/were not the Plaintiff's original
  "Lender".

1

- The Plaintiff's Note and mortgage are not a legally held corpus asset of the Defendant Delaware Statutory Trust, as the same were never legally conveyed to the said Trust under the controlling terms of its Governing Instrument Pooling and servicing Agreement (8k), see Plaintiff's verified complaint at ¶18, ¶22, ¶¶38-68

- Based upon Plaintiff's request for Declaratory Judgment in Count I of his verified complaint, the documents recorded at the Plymouth County Registry of Deeds, The Defendant Trustee has/have not established that it/they is/are a proper party to enforce the power of sale under G.L. c. 244 § 14, under the requirements recently enunciated by the Supreme Judicial Court in *Eaton v. Fed Nat. Mortgage Ass'n*, 462 Mass. 569 (2012).

- Therefore, Defendant has not met the strict statutory definition of "mortgagee under G.L. c. 244 § 14, and is therefore not a proper party with jurisidiction and authority to utilize the said statutory remedy on non-judicial foreclosure.

## DISCUSSION

I.  **Massachusetts G.L. c. 244 § 14, And Non-Judicial Foreclosure Requirements In The Commonwealth.**

Mortgage foreclosure in the Commonwealth, operates as a "creature of contract" and statute, as an "assignment of mortgage" is a transfer of title to real property [as Massachusetts is a "title-theory" jurisdiction])", and therefore the institution of the non-judicial foreclosure process in Massachusetts does not operate as a function of any judicial proceeding[1]. G.L. c. 244 § 14 has recently come under scrutiny by the Massachusetts Supreme Judicial Court ("SJC"), in *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637 (2011)[2], "Massachusetts does not require a mortgage holder to obtain judicial authorization to foreclose on a mortgaged property See G.L. c. 183 § 21; G.L. c. 244 § 14", *Ibanez* at page 649. Where a mortgagor grants a mortgage holder the power of sale, it includes by reference, the power of sale set out in G.L. c 183 § 21, and further regulated by G.L. c. 244, §§ 11-17C. Additionally, under G.L. c. 183 § 21, after a mortgagor

---

[1] Outside of the limited judicial proceeding that needs to be initiated by the foreclosing entity in the Land Court under the Servicemembers Civil Relief Act.

[2] Plaintiff's counsel represented the *LaRace* family in this action.

*defaults in the performance of the underlying note*, *the mortgagee* may enforce the power of sale, and auction the property at a public sale, extinguish the mortgagor's right of redemption, and convey the property to the purchaser in fee simple, 'and such [legally valid] sale shall forever bar the mortgagor and all claiming under him, all right and interest in the mortgaged premises, whether at law or in equity." *Ibanez* at page 13. [emphasis added]. Even more recently, G.L. c. 244 § 14, came under further scrutiny in *Eaton v. Fed Nat. Mortgage Ass'n*, 462 Mass. 569 (2012). In *Eaton*, the Supreme Judicial Court definitively stated that for foreclosure auction sales noticed after June 22, 2012, the foreclosing entity claimant must show its authority to enforce a borrower's Note, as well as the mortgage. Here, the Defendant sent the mandatory notice of auction sale to Plaintiffs on July 22, 2014, and thus the holding of *Eaton* is clearly applicable to the instant matter.

Clearly, the SJC stated in *Eaton* that the foreclosing entity (such as Defendant here) claiming to be the "holder" of the Note, must show that either; it is the note *owner*, or *acting for the note owner*:

> "..the term "note holder" is used to refer to a person or entity owning the "mortgage note." *Eaton*, at n. 2

**II.   The Defendant Trustee Purports to Claim Rights to Legally Enforce the Plaintiff's Note and Mortgage on Behalf of the Defendant Delaware Statutory Trust, Under The Trust's Governing Instrument Pooling and Servicing Agreement (8k).**

It is precisely because the operation of mortgage foreclosure in Massachusetts is "extra-judicial", that Massachusetts courts have long required that the requirements of the statutes are to be followed *"strictly"*, "recognizing the substantial power that the statutory scheme affords to the mortgage holder to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power (of sale) must follow strictly its terms. If he fails to do so there

is no valid exercise of the power, and the sale is wholly void'". *Ibanez* at page 650 (quoting *Moore v. Dick*, 187 Mass. 207, 211 (1905), *Roche v. Farnsworth*, 106 Mass. 509, 513 (1871).

The power of sale contained in the mortgage "must be executed in strict compliance with its terms", see *McGreevey v. Charlestown Five Cents Sav. Bank*, 294 Mass. 480, 484 (1936). The specific contractual wording in the Plaintiff's Security Instrument contract, at ¶16 Governing Law; Severability- Construction, the contractual language clearly states that it is governed by the *"Applicable Law"* of the jurisdiction. The Security Instrument contract defines "Applicable Law" at ¶I, page 2 of the mortgage contract, as including non-appealable final judicial opinions.

The Massachusetts Supreme Judicial Court ("SJC") made the ruling in *Eaton* prospective to have application only to noticed foreclosure auction sales that were published after June 22, 2012. The instant notice of auction was sent to Plaintiff on or about July 22, 2014, clearly leaving the non-appealable final decision of the SJC in *Eaton* applicable to this matter, and therefore "Applicable Law" as specifically defined under the specific contractual language of the Plaintiff's Security Instrument contract.[3]

**A. Defendant Has Failed to "Strictly Follow" G.L. c. 244 § 14, and G.L. c. 183 § 21**

One of the terms of the power of sale to be strictly adhered to, is the restriction on exactly who is entitled to foreclose. "The statutory power of sale can be exercised by the mortgagee or his executors, administrators, successors, or assigns" G.L. c. 183 § 21. Under G.L. c. 244 § 14, the mortgagee or person having his estate in land mortgaged, or a person authorized by the

---

[3] "A foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage. See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender *or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant*").." *Ibanez*, at 651.

power of sale, or attorney duly authorized by a writing under seal, or the legal guardian or conservator of such mortgagee or person acting in the name of such mortgagee or person is empowered to exercise the power of sale.

> "Any effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under these statutes is void" See *Chase v. Morse*, 189 Mass. 559, 561 (1905), citing Moore v. Dick supra, see also *Davenport v. HSBC Bank USA*, 275 Mich App. 344. 347-348 (2007).

A related statutory requirement that must be strictly followed in a foreclosure by power of sale, is the notice requirement articulated in G.L. c. 244 § 14. This statute provides that "no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, advance notice of the foreclosure sale is provided to the mortgagee, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or general publication in that town" *Ibanez* at page 639. This reasoning has long been upheld in this Commonwealth, "The manner in which the notice of the proposed sale shall be given is one of the important terms of the power and a strict compliance with it is essential to the valid exercise of the power" *Moore v. Dick* supra at 212, see also *Chase v. Morse*, supra, ("where a certain notice is prescribed, a sale without any notice, or upon a notice lacking the essential requirements of the written power, would be void as a proceeding for foreclosure").

Only a present holder of the mortgage with the legal authority to exercise the power of sale is authorized to foreclose on the mortgaged property. Therefore, under G.L. c. 244 § 14, the mortgagor is entitled to know the exact identity of the party who is seeking to foreclose and sell the property under the power of sale in the mortgage contract, in order that the mortgagor has the ability to exercise their statutory right of resumption under G.L. c. 244 § 18. The failure to identify the "holder" of the mortgage with the legal authority to exercise the power of sale in the

·mortgage in the notice of sale, renders the notice of sale defective, and the foreclosure sale void
See *U.S. Bank v. Ibanez* 458 Mass. 637 (2011).

G.L. c. 244, § 14 was recently revised to require that if a foreclosing claimant is an
"assignee" (not original "Lender"):

> "For purposes of this section [14] and section 21 of chapter 183, in the event a
> mortgagee holds a mortgage pursuant to an assignment, no notice under this
> section shall be valid unless (i) at the time such notice is mailed, an assignment,
> **or a chain of assignments, evidencing the assignment of the mortgage to the**
> **foreclosing mortgagee has been duly recorded in the registry of deeds for the**
> **county or district where the land lies** and (ii) the recording information for all
> recorded assignments is referenced in the notice of sale required in this section."

In *Eaton v. Fed. Nat'l Mortgage Ass'n*, 462 Mass. 569 (2012), the Supreme Judicial
Court held that for foreclosure auction sales noticed after June 22, 2012, the foreclosing entity
must also provide evidence that it also has possession of "ownership" of a borrower's promissory
note, or acting as agent for a principal that has current possession of "ownership" of a borrower's
promissory note. Thus, a purported "assignment" of a mortgage only, where such entity acts on
behalf of a note holder, would require disclosure of those entity(s).

Here, the Defendant U.S. Bank, N.A. purports to be legally acting as a "Trustee" [thus
not in its own right] seeking to enforce a purported legally held corpus asset[s] (Plaintiff's note
and mortgage], on behalf of a Delaware Statutory Trust. The Defendant Trust is governed by its
Governing Instrument, and more particularly relevant to the instant litigation, the legal
conveyance of the Trust's underlying mortgage loan corpus assets to the Trust. Indeed, the terms
of the Governing Instrument PSA, 8K, quite clearly set forth that there is to be a specific
protocol to be followed in order for a corpus asset to be legally among the same. The Governing
Instrument set forth that it is party specific, and has temporal limitations of being date certain
(please see complaint at ¶40-63, with referenced bates numbered pages of Exhibits A, and B. As

the Defendant Trust is admittedly a Delaware Statutory Trust, the Governing Instrument 8k clearly states that the creation, and formation of the Trust is also governed by 12 Delaware Code §3801, et. seq., see complaint at ¶64-68, at referenced bates numbered pages of Exhibit C

Here, as the Defendant is not the original mortgagee to whom the power of sale was purportedly granted by Plaintiff; Defendant would have the authority to exercise the power of sale against Plaintiff *__only__* if it currently holds legally valid  rights of enforcement over the Plaintiff's *__note and mortgage__* at the time of the first publication of the intended March 24, 2015 notice of auction sale. Another reason that the requirements of G.L. c. 244 § 14 must be followed *__strictly__*, is that Massachusetts is a "title theory" jurisdiction, and thus an any purported transfer of mortgage in Massachusetts is, "a conveyance of an interest in land that requires an executed writing signed by the grantor", see *Ibanez* at 649 (quoting G.L. c. 183 § 3, *Saint Patrick's Religious Educ. & Caritable Ass'n v. Hale*, 227 Mass. 175, 177 (1917). "In a title-theory state like Massachusetts, a mortgage is a transfer of legal title in a property *__to secure a debt__*" *Fanueil Hall Investors Group, Ltd. Partnership v. Selectman of Dennis*, 456 Mass. 1, 6 (2010) [emphasis added]. Here, Defendant seeks to create the appearance that it legally holds both the Plaintiffs' mortgage and debt obligation (promissory note) with legal rights of enforcement thereto as legally held Trust corpus assets.

Therefore the Plaintiff has made plausible allegation that the Defendant lacks the current authority under G.L. c. 244 § 14 to hold the currently scheduled March 24, 2015 foreclosure auction of the Plaintiff's residence. As a result of the foregoing the Plaintiff has a substantial likelihood of success on the merits of the underlying complaint in this matter.

# ARGUMENT

## I.  Plaintiffs Likelihood of Success on the Merits

In Massachusetts, it is well settled that where parties

Have no claim of ownership of the property that is the subject of the lawsuit, they have no standing to bring the suit. *Capital Site Mgmt. Assoc. v. Mercantile Bank & Trust Co.*, 1995 Mass.Super. LEXIS 138, 8-9 (Mass. Super. Ct. Sept 18, 1995.). Thus, the court in *Kirk v. MacDonald*, 21 Mass. App. Ct. 21, 24 (1985) held that the plaintiffs had standing in a foreclosure action because they held attachments in the real estate and therefore had an interest in the property as junior lienors, in contrast to the situation in cases such as *Hogarth-Swann*, 274 Mass. 125, 132, 174 N.E. 314 (1931), and in *Razin v. Razin*, 332 Mass. 754 (1955), in which the parties had no interest in the disputed property and thus no standing.

Here, it appears that Defendant is not a proper party to utilize the statutory extra-judicial statutory remedy to initiate the foreclosure action under G.L. c. 244 § 14 at the time it first published the auction of the Plaintiffs' primary residence. "Courts are not established to enable parties to litigate matters in which they have no interest affecting their liberty, rights or property". *Razin v. Razin*, 332 Mass. 754 (Mass. 1955). Based upon Defendant(s) publically recorded documents, and the controlling terms of its very own Governing Instrument, Defendant is not a "mortgagee" as specifically defined under statute, and therefore cannot legally through with its intended foreclosure sale of the Plaintiff's primary residence.

## II.  Risk of Irreparable Harm to the Plaintiff if the Injunction is not Issued

In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by final judgment rendered either at law or in equity. *Packaging Industrial Group v. Cheney, 380 Mass.* 609, 616 (1980). In this case, the Plaintiff will

lose his real property if the requested injunction is not granted. Real property is unique and money damages are inadequate to redress a deprivation of an interest in land. *McCarthy v. Tobin*, 429 Mass. at 89. Thus, if the Plaintiff's request for preliminary injunction is not granted by this court, he will be left with an inadequate damage remedy at law. The harm to the Plaintiff, should an injunction be denied him, would be irreparable, and will visit far more injury to him than will be experienced by Defendant(s), should injunctive relief be granted. See *Gardner v. Lazure*, Mass. L. Rep. 239 (Mass. Super. Ct. 2000).

### III.   Irreparable Harm to be Suffered by the Defendant(s) if the Injunction is Issued

Defendant faces no risk of irreparable harm should the requested injunction issue. As stated above in this Memorandum, Defendant(s), was not the Plaintiff's Lender, and therefore never supplied the Plaintiff any monies. Defendant faces significant problems in proving that it in fact it/they are a proper party to utilize the extra-judicial statutory under G.L. c. 244, § 14. However, if it is determined that Defendant was a bona fide assignee of the note and mortgage at the time it published the auction of the Plaintiffs residence, then the granting of the requested injunction will only potentially cost Defendant(s) time and possibly interest on whatever money it would have made from the upcoming foreclosure auction sale. "Anything that can be repaired by the payment of money is not irreparable". *Norfolk County Hospital v. Commonwealth,* 25 Mass. App. Ct. 586, 593, *review denied,* 402 Mass. 1104 (1988); *Westinghouse Broadcasting Co. v. New England Patriots Football Club, Inc.* 10 Mass. App. Ct.70,72 (1980); *K-mart Corp. v. Oriental Plaza,* 875 F2d. 907, 914 (151Cir. 1989); *Sierra Club v. Larson,* 769 F. Supp. 410 (D. Mass. 1991), *aff'd, review denied* 2 F3d 462 (I" Cir. 1993).

**WHEREFORE,** the Plaintiff respectfully requests that this court grant his request for emergency injunctive relief.

Respectfully submitted,
Plaintiffs
By his Attorney,

_____
Glenn F. Russell, Jr., Esq.
BBO# 656914

Glenn F. Russell, Jr.,
& Associates, P.C.
38 Rock Street, Suite #12
Fall River, MA 02720
(508) 324-4545
(508) 938-0244

Dated: March 19, 2015

A TRUE COPY ATTEST

_____
Clerk of Courts

---

## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr. hereby certify that on March 19, 2015, I served a true courtesy copy of the foregoing Emergency Motion for Preliminary Injunction, Memorandum of Law In Support, and Verified Complaint, with attached Exhibits A-C, inclusive on the Defendant's attorney, listed below;, AND ADDITIONALLY WILL FORMALLY SERVE UPON THE Defendant by way of formal process server at U.S. Bank, N.A., as Trustee, Successor In Interest To Bank of America, N.A., Successor by Merger to LaSalle Bank, N.A., as Trustee for WaMu Pass-Through Certificates, Series 2007-OA4, to it registered agent located at One Federal Street, 3rd Fl. Boston, MA 02110

Doonan Graves, Longoria
100 Cummings Center, Ste 225D
Beverly, Ma 01915

_____
Glenn F. Russell, Jr

## Commonwealth of Massachusetts
### County of Plymouth
### The Superior Court

CIVIL DOCKET# PLCV2015-00252

Francis J. Sampson, Jr., Plaintiff

vs.

U.S. Bank National Association as Trustee, Successor in Interest to Bank of America, N.A., Successor in Interest by Merger to LaSalle Bank, N.A. as Trustee for Wamu Pass Through Certificates, Series 2007-OA4, Defendant

### SUMMONS AND ORDER OF NOTICE

To the above-named Defendant:

You are hereby summoned and required to serve upon **Glenn F Russell, Jr, Esquire**, plaintiff's attorney, whose address is **38 Rock Street Suite 12, Fall River, MA 02720,** , an answer to the complaint/cross claim/counterclaim which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint/ cross claim/counterclaim. You are also required to file your answer to the complaint/ cross claim/counterclaim in the office of the Clerk of this Court at Plymouth either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a **preliminary injunction** and that a hearing upon such application will be held at the court house at said Plymouth County Superior Court, in Plymouth on **03/23/2015, at 02:00 PM in Superior Court Courtroom 3rd fl (52 Obery St),** at which time you may appear and show cause why such application should not be granted.

**Witness, Judith Fabricant,** Esquire, Chief Justice of the Superior Court, at Plymouth, Massachusetts this 19th day of March, 2015.

............................................................................................
Clerk

### (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

3-23-14

5

# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS

SUPERIOR COURT
CIVIL ACTION NO.: PLCV2015-00252

*************************************

FRANCIS J. SAMPSON, JR.      *
           **Plaintiff,**      *
v.      *
                 *
U.S. BANK NATIONAL ASSOCIATION *
AS TRUSTEE SUCCESSOR IN      *
INTEREST TO BANK OF      *
AMERICA N.A., SUCCESSOR IN      *
INTEREST BY MERGER TO      *
LASALLE BANK, N.A. AS TRUSTEE      *
FOR WAMU PASS THROUGH      *
CERTIFICATES, SERIES 2007-OA4,      *
          **Defendant.**      *
                 *

*************************************

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAR 2 3 2015

Clerk of Court

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on March 20, 2015, a Notice of Removal of the above-entitled action was filed with the Clerk of United States District Court for the District of Massachusetts. The new civil action number is 15-11064 . Notice was filed by U.S. Bank National Association as Trustee Successor in Interest to Bank of America N.A., Successor in Interest to LaSalle Bank, N.A. as Trustee for WAMU Pass Through Certificates, Series 2007-OA4 Trust ("U.S. Bank").

PLEASE TAKE FURTHER NOTICE that, as provided by 28 U.S.C. § 1446(d), the Plymouth County Superior Court "shall proceed no further unless and until the case is remanded."

A copy of the Notice of Removal, without attachments, is annexed to this Notice. This Notice is furnished and shall be filed as provided by 28 U.S.C. § 1446(d).

Respectfully Submitted,
U.S. Bank National Association as Trustee
Successor in Interest to Bank of America N.A.,
Successor in Interest to LaSalle Bank, N.A. as
Trustee for WAMU Pass Through Certificates,
Series 2007-OA4 Trust
By its attorneys,

Dated: 3/20/15

Brian C. Linehan, Esq. (BBO #690437)
Reneau J. Longoria, Esq. (BBO #635118)
John A. Doonan, Esq. (BBO #547838)
Stephen M. Valente, Esq. (BBO #663118)
Doonan, Graves & Longoria, LLC
100 Cummings Center Suite 225D
Beverly, MA 01915
Tel. (978) 921-2670
bl@dgandl.com

A TRUE COPY ATTEST

Clerk of Courts

## CERTIFICATE OF SERVICE

I certify that a true copy of the Notice of Filing of Notice of Removal was served upon the Plaintiffs in this action by electronic notification and/or mailing a true copy of the same, first class mail; postage prepaid, on 3/20/15 to:

Brian C. Linehan, Esq.

Glenn F. Russell, Jr., Esq.
Law office of Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**************************************

FRANCIS J. SAMPSON, JR.
           Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE SUCCESSOR IN
INTEREST TO BANK OF
AMERICA N.A., SUCCESSOR IN
INTEREST BY MERGER TO
LASALLE BANK, N.A. AS TRUSTEE
FOR WAMU PASS THROUGH
CERTIFICATES, SERIES 2007-OA4,
           Defendant.

**************************************

Civil Action No.

## NOTICE OF REMOVAL OF MATTER TO
## THE UNITED STATES DISTRICT COURT

NOW COMES the Defendant U.S. Bank National Association as Trustee Successor in

Interest to Bank of America N.A., Successor in Interest to LaSalle Bank, N.A. as Trustee for

WAMU Pass Through Certificates, Series 2007-OA4 Trust ("U.S. Bank"), by and through their

undersigned counsel, Doonan, Graves & Longoria LLC, and pursuant to Chapter 28, Section

1441 (a) and (b) of the United States Code, do hereby remove the action pending in the Plymouth

County Superior Court as Civil Action No. **PLCV2015-00252**, to the United States District

Court, District of Massachusetts. In support of this removal, Defendant state as follows:

## I.    SERVICE

1.    The Plaintiff(s) filed the instant Complaint and Motion for a Temporary

    Restraining Order in the Plymouth County Superior Court on or about March 19,

    2015, civil action number **PLCV2015-00252** to determine if U.S. Bank has the

authority to exercise the power of sale for the subject property, which was scheduled to take place on March 24, 2015.

2. Upon information and belief, U.S. Bank has not yet been properly served at the time of this filing.

3. This Notice of Removal was filed electronically on March 20, 2015.

4. The undersigned contacted Plaintiff's counsel concerning his filing on March 20, 2015, via electronic mail and to let him know the sale was postponed to April 28, 2015, and the matter would be removed to U.S. District Court.

## II. PLEADINGS AND NOTICE TO STATE COURT

6. Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, certified copies of all pleadings, records, orders and proceedings, from the Plymouth County Superior Court have been requested and will be filed with this Court upon receipt. A copy of the Complaint and all documents received from counsel is attached hereto as Exhibit A.

7. Contemporaneous with the filing of this Notice, the Defendant have given written notice and contacted Plaintiff's counsel to inform him of the Removal and has notified the Plymouth County Superior Court of this Removal.

## III. STATEMENT OF GROUNDS FOR REMOVAL

7. This action is within the jurisdiction of the U.S. District Court pursuant to 28 U.S.C. § 1332, which provides in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between...citizens of different states." 28 U.S.C. § 1332(a)(1).

8. This action is removable from the Plymouth County Superior Court to this Federal District Court since it is a civil action and diversity exists under Chapter 28 U.S.C. Section §1332.

9. Plaintiff previously filed a Complaint and Motion for Temporary Restraining Order in the Plymouth Superior Court on March 19, 2015.

10. On or about March 19, 2015, the Defendant, through the undersigned, received the Motion by electronic mail and subsequently removed the matter to this Court.

11. The Defendant postponed the foreclosure sale scheduled for March 24, 2015, at 12:00 pm by public proclamation to allow the Court time to review pleadings and schedule a hearing if needed, and the sale was re-scheduled for April 28, 2015, at 1:00 pm.

## A. The Parties are citizens of different states.

12. The Plaintiff in this action, Francis J. Sampson, Jr. represented in his Complaint that he is a resident of Duxbury. (Compl. at ¶ 1).

13. Defendant, U.S. Bank, upon information and belief, is a national bank organized and existing under the laws of the United States of America with its principal place of business located at 425 Walnut Street, Cincinnati, OH 45202, and is acting solely as Trustee for WAMU Mortgage Pass-Through Certificates, Series 207-OA4 Trust.

14. The essence of the controversy in the instant matter is the claim made by the Plaintiff(s) that U.S. Bank does not have standing to foreclose on the property; that U.S. Bank cannot credibly dispute that it purports to act as a separate trustee under Delaware law that purports to enforce legal rights to a purported legally

held corpus asset of WaMu Mortgage Pass-Through Certificates, Series 2007-0A4 Delaware Statutory Trust.

**B.**  **Amount in Controversy Exceeds $75,000.00 Jurisdictional Threshold.**

15.  The amount in controversy meets the jurisdictional threshold as the unpaid balance of the mortgage, which is the subject matter of this action and was scheduled for foreclosure March 24, 2015, is in excess of one million two hundred eighteen thousand six hundred sixty-five and 49/100 ($1,218,665.49) dollars as of March 12, 2015.

16.  The Supreme Court has held that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n.*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181, 56 S. Ct. 780, 781 (1936).

17.  "It is well-settled that when a plaintiff seeks an injunction to prevent impending foreclosure proceedings or to invalidate a foreclosure sale, the object of the litigation is the property at issue. *See Campaniello v. Marathon Structured Asset Solutions Trust, et al*, Civil Action No. 11-400081-FDS (May 5, 2011) citing e.g., *Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076* (9th Cir. 1983) (explaining that because "[t]he whole purpose of this action is to foreclose [defendant] from selling this property," the object of the litigation was the property); *Hersey v. WPB Partners, LLC*, 2011 WL 587959, at *2 (D.N.H. Feb 8, 2011)(explaining that if an injunction to prevent foreclosure were at issue, the value of the property

4

would be the measure of the amount in controversy); *Reye v. Wells Fargo Bank, N.A.*, 2010 WL 2629785, at *4 (N.D. Cal. June 29, 2010)(stating that "if the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation"); *Berry v. Chase Home Fin., LLC*, 2009 WL 2868224, at *3 (S.D. Tex. August 27, 2009) (reasoning that the value of the declaratory and injunctive relief is the fair market value of the property at issue because without the relief, "[p]laintiff could be divested of all right, title, and interest to the[p]roperty"); *Garland v. Mortgage Elec. Registration Sys., Inc.*, 2009 WL 1684424, at *1-3 (D. Minn. Jun. 16, 2009)(determining that, in an action seeking a declaration that the defendant had no authority to foreclose on the property, the amount in controversy was either the amount of the underlying debt or the fair market value of the property).

C.    **Additional Requirements for Removal Have Been Met.**

18.    No prior removal of this action has been attempted.

19.    The removal of this action is timely under the provisions of 28 U.S.C. § 1446(b) as it is being filed within thirty days of the Defendant's receipt of the initial pleading.

20.    Removal is proper in this case, because the value of the subject mortgage, the foreclosure of which the Plaintiff is seeking to enjoin, is in excess of one million two hundred eighteen thousand six hundred sixty-five and 49/100 ($1,218,665.49) dollars, and there is complete diversity between the parties. 28 U.S.C. §1332.

21.    Copies of all pleadings received by the Defendant in this proceeding are attached hereto.

WHEREFORE the Defendant hereby requests that this Court accept jurisdiction over this matter.

Respectfully Submitted,

U.S. Bank National Association as Trustee
Successor in Interest to Bank of America N.A.,
Successor in Interest to LaSalle Bank, N.A. as
Trustee for WAMU Pass Through Certificates,
Series 2007-OA4 Trust
By its attorneys,
By their attorneys,

Dated: 3/20/2015

/s/Brian C. Linehan
Brian C. Linehan, Esq. (BBO #690437)
Reneau J. Longoria, Esq. (BBO #635118)
John A. Doonan, Esq. (BBO #547838)
Stephen M. Valente, Esq. (BBO #663118)
Doonan, Graves & Longoria, LLC
100 Cummings Center Suite 225D
Beverly, MA 01915
Tel. (978) 921-2670
bl@dgandl.com

## CERTIFICATE OF SERVICE

I, Brian C. Linehan, Esq., hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 20, 2015.

/s/ Brian C. Linehan
Brian C. Linehan, Esq